IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>**Plaintiff**<br><br>v.<br><br>ROBERTO CEDEÑO-OLIVENCIA [4]<br><br>**Defendant** | CRIM NO. 20-382-4 (RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Roberto Cedeño-Olivencia's ("Defendant" or "Mr. Cedeño-Olivencia") *Omnibus-Consolidated Motion for Suppression of Evidence, Evidentiary Hearing, Franks Hearing, and Dismissal of Indictment* ("*Motion to Suppress*") (Docket No. 410). Having analyzed these motions, its exhibits, as well as the Government's response (Docket No. 464) and Defendant's *Reply* (Docket No. 485) thereto, the Court hereby **DENIES** Mr. Cedeño-Olivencia's requests at Docket No. 410.

I. **BACKGROUND**

On November 1, 2020, pursuant to a criminal complaint filed with the Court the same day, an arrest warrant was issued as to Mr. Cedeño-Olivencia. (Docket No. 2). The criminal complaint was supported by an Affidavit by FBI Task Force Agent Dowling J. Lugardo ("Agent Lugardo"). (Docket No. 1-1). In its relevant parts,

Agent Lugardo asserts there exists probable cause to arrest for the following reasons:

> The government, including the FBI, is conducting a criminal investigation with Roberto Cedeno-Olivencia, Rafael Texidor-Perez, Carlos Javier Nieves-Rivera, and Jose Raul Dotel1 as subjects and regarding probable violations of 21 U.S.C. §§ 841(a)(1), 846, and 952(a), and 46 U.S.C. §§ 70503(a)(1) and 70506(b). In general terms, beginning in or around February 2020 and going through the present day, the three aforementioned subjects, a confidential human source (CHS), an undercover employee (UCE), and other individuals known and unknown, have communicating and conspiring, both in person and electronically, with the specific goal of importing approximately 500-700 kilograms of cocaine in the late summer/early fall months of 2020. The actual drug transfer took place on the high seas on November 1, 2020.
>
> After a period of delays, negotiations, and agreements, that importation is anticipated to take place on November 1, 2020, at a location on the high seas, approximately 93 nautical miles south of Cajo Rojo, Puerto Rico…
>
> […]
>
> On Sunday, November 1, 2020, subjects Texidor-Perez, Dotel, and subject Roberto Cedeno-Olivencia were together in a vehicle while the CHS and Nieves-Rivera were together in another vehicle. After dropping Dotel off at his house, Texidor-Perez and Cedeno-Olivencia were observed driving a large rental truck. An arrest warrant was previously issued for subject Texidor-Perez, and agents executed that arrest warrant via a traffic stop on the truck with Texidor-Perez and Cedeno-Olivencia.
>
> At the time of the traffic stop of the large rental truck, the vehicle was traveling in the

>       direction of Cabo Rojo, the location where the
>       drug load was expected to come in. Federal
>       agents observed and recovered from the rear of
>       the rental truck multiple empty suitcases.

Id. at 3-6 (emphasis added).

Subsequently, a Grand Jury returned a four (4) count Indictment against Mr. Cedeño-Olivencia, among twenty-nine (29) other defendants. (Docket No. 22). Count One of the Indictment charges violations of 46 U.S.C. §§ 70503(a)(3), 70506(a), (b) (Conspiracy to Possess with Intent to Distribute a Controlled Substance on Board a Vessel Subject to the Jurisdiction of the United States). Id. at 2-3. Count Two charges a violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(1)(B)(ii), 963 (Conspiracy to Import a Controlled Substance into the United States). Id. at 3-4. Count Three charges a violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(1)(B)(ii), 963 (Attempt to Import a Controlled Substance into the United States). Id. at 4-5. Lastly, Count Four charges a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii), 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance). Id. at 6.

Defendant filed an *Omnibus-Consolidated Motion for Suppression of Evidence, Evidentiary Hearing, Franks Hearing and Dismissal of Indictment*. (Docket No. 410). He asserts that discovery materials provided by the Government, as well as other evidence, contradict Agent Lugardo's affidavit in support of the

criminal complaint. Id. at 2-3. Specifically, Defendant maintains that he was the sole occupant of the rental truck when he was stopped by law enforcement and was not in the vehicle with co-defendant Rafael Texidor-Perez ("Texidor") as alleged by Agent Lugardo.[1] Id. Mr. Cedeño-Olivencia therefore posits that his arrest was illegal as it was premised on inaccurate information. Moreover, although he admits to providing written consent to search the vehicle, he maintains that the evidence obtained therein is inadmissible as fruit of the poisonous tree. Id. at 2, 6. Consequently, Defendant requests that the Court: (1) hold an evidentiary hearing and suppress the evidence seized as a result of the illegal traffic stop of the vehicle he was traveling in at the time of the arrest; and (2) conduct a *Franks* hearing to clarify false statements made by law enforcement in support of the arrest warrant. Id. at 6.

The Government filed a *Response in Opposition*. (Docket No. 464). Although the Government concedes the affidavit in support of arrest contains a discrepancy, it affirms that said inaccuracy is insufficient to warrant the relief requested by Defendant. Id. at 4-6. The Government claims that Defendant failed to make the

---

[1] To support this claim, Defendant provided the FBI-302 detailing his arrest and stating that he was the lone occupant of the vehicle; photographs of the vehicle depicting a pile of items in the passenger seat; the FBI-302 outlining Texidor's arrest in a different vehicle; Puerto Rico Police Bureau documents stating that there is no record of intervening with Texidor; and Defendant's own declaration under penalty of perjury. (Docket Nos. 410-1 – 410-5).

requisite showing that the misstatement was made intentionally. Id. at 7. Furthermore, even if the error is stricken, the affidavit still provided sufficient grounds for probable cause. Id. at 8. The Government also proffers that there was probable cause to stop the truck Defendant was in because he was allegedly driving in tandem with a different car occupied by Texidor. Id. at 12.

Mr. Cedeño-Olivencia filed a *Reply to Government's Response* noting that the Government's argument that he was driving in tandem with co-defendant Texidor is unsupported and asserting that he has not received any evidence or reports to establish this theory of events. (Docket No. 485 at 2).

## II.  APPLICABLE STANDARD

Generally, applications and affidavits in support of an arrest or search warrant are "presumptively valid." United States v. Barbosa, 896 F.3d 60, 67 (1st Cir. 2018) (quoting United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013)). However, in certain circumstances, "a defendant may be able 'to rebut this presumption and challenge the veracity' of the warrant application" at a pretrial *Franks* hearing. Id. (quoting United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015)).

There is no right to a *Franks* hearing. Rather, a defendant can be "entitled to an evidentiary hearing to test the veracity of a warrant affidavit **if he can make a substantial showing that the affiant intentionally or with reckless disregard for the truth**

**included a false statement in the affidavit, which statement was necessary to the finding of probable cause.**" United States v. Tanguay, 787 F.3d 44, 48 (1st Cir. 2015) (emphasis added).

In Franks v. Delaware, the Supreme Court determined that, once this threshold is met and a hearing is granted:

> [I]f a defendant can show, by a preponderance of the evidence, that there were false statements included in the warrant affidavit and that, with the "false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, **the ... warrant must be voided and the fruits ... excluded** to the same extent as if probable cause was lacking on the face of the affidavit."

Barbosa, 896 F.3d at 68 (quoting Franks v. Delaware, 438 U.S. 154, 156 (1978)) (emphasis added).

### III. ANALYSIS

#### A. Errors in the affidavit

It is *uncontested* that the affidavit in support of the criminal complaint incorrectly stated that Mr. Cedeño-Olivencia was in the same vehicle as co-defendant Texidor. Although Defendant complied with Franks by (1) specifically identifying the portion of the warrant affidavit that is claimed to be false; and (2) providing an offer of proof and statement of supporting reasons, he **failed to establish, or even allege, that the misstatements were deliberately false or reckless.** Franks, 438 U.S. at 155–172. "Mere inaccuracies, even negligent ones, are not enough" to warrant

a Franks hearing. United States v. Adams, 305 F.3d 30, 36 n. 1 (1st Cir. 2002). *Cf.* United States v. Patterson, 877 F.3d 419, 424 (1st Cir. 2017) (rejecting defendant's argument that misstatement "must have been made intentionally because [it] appeared in the affidavit twice" and/or because the officer had access to police reports that did not contain the misstatement).

Moreover, "[a]though defects in the complaint may render illegal an arrest that was made on a resulting warrant, **they do not deprive the court of jurisdiction or prevent a prosecution if a valid indictment is subsequently returned**." Wright and Miller, 1 Fed. Prac. & Proc. Crim. § 42 (4th ed.). In other words, **a subsequent valid indictment following arrest can "remed[y] any defect in the complaint and arrest warrant.**" Denton v. United States, 465 F.2d 1394, 1395 (5th Cir. 1972) (citing Tanner v. United States, 296 F.2d 218 (10th Cir. 1961)) (emphasis added). As explained above, a valid indictment was returned in this case. (Docket No. 22). Thus, a *Franks* hearing or dismissal of the indictment is improper.

**B. Evidence obtained from the traffic stop**

In his *Motion to Suppress*, Defendant admits that he **consented in writing** to the search of the vehicle but affirms that the evidence found is inadmissible as it was obtained from an illegal arrest. (Docket No. 410 at 2 and 6). An illegal stop, on its own, "does not definitively determine whether the evidence derived from

the subsequent searches must be excluded." United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993). Notably, "[c]onsent to search may, but does not necessarily, dissipate the taint of a fourth amendment [sic] violation." Id. The admissibility of the evidence depends on "whether the consent was voluntarily given and whether it was an independent act of free will." Id. *See also*, United States v. Carson, 793 F.2d 1141, 1149 (10th Cir. 1986) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973)) ("[u]nder the Fourth Amendment, evidence obtained pursuant to defendant's consent is admissible only if defendant's grant of consent is voluntary under the totality of the circumstances.").

In the case at bar, Defendant has not alleged that his written consent to the search was coerced or otherwise involuntary. Nor is there any evidence on the record to that effect. The Federal Bureau of Investigation ("FBI") form FD-302 filed as an exhibit to the *Motion to Suppress* states that:

> Cedeño-Olivencia was asked to read a FD.26.15 (Consent to Search, Spanish Version). FBI TFO Jose Quinones-Mendez, TFO Miguel A. Barbosa-Quinones and TFO Nelson Munoz-Sanchez were present during the interview and procedures. Cedeño-Olivencia read, understood, signed the form and provided consent to Agents to search the Ford Van, and everything inside of it, including luggage and suitcases.
>
> Immediately, Cedeño-Olivencia stated that somebody gave him the Ford van to drive to Ponce, PR, and that he did not know what was inside the ford van.

(Docket No. 410-2 at 2). Moreover, Defendant's Declaration under Penalty of Perjury does not address the search nor his consent to it. (Docket No. 410-7).

Even assuming, *arguendo*, that his arrest was illegal, the Court cannot grant Defendant's request to suppress the evidence seized in light of the admitted consent to the search.

## IV.   CONCLUSION

Pursuant to the above, Defendant's *Omnibus-Consolidated Motion for Suppression of Evidence, Evidentiary Hearing, Franks Hearing, and Dismissal of Indictment* at Docket No. 410 is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of January 2022.

S/RAÚL M. ARIAS-MARXUACH
UNITED STATES DISTRICT JUDGE